STATE OF CONNECTICUT *v.* ORINDEL KIDD
(AC 18593)

Spear, Hennessy and Shea, Js.

Argued January 14—officially released August 29, 2000

*Frank P. Cannatelli,* for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Maxine Wilensky,* senior assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Orindel Kidd, appeals from the judgment of conviction, rendered after a jury trial, of one count of carrying a pistol without a permit in violation of General Statutes § 29-35 and one count of possession of a weapon in a motor vehicle in violation of General Statutes § 29-38. The defendant claims that the trial court improperly denied his motion to suppress the gun that was seized from his person. Specifically, he claims that the gun should have been excluded from trial because the arresting officer had neither a reasonable and articulable suspicion, pursuant to *Terry* v. *Ohio,*[1] nor proper grounds under the exigent circumstances exception to approach him.[2] We affirm the judgment of the trial court.

At the hearing on the defendant's motion to suppress, the court found the following facts. On July 19, 1996, at about 7 p.m., plainclothes officers of the New Haven police department conducted a drug surveillance in unmarked vehicles on Putnam Street. When several officers saw two men within a group engaged in what appeared to be a drug transaction in front of 129 Putnam

---

[1] *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[2] The defendant also claims that the court improperly determined that he did not have standing to challenge the seizure of the gun. The defendant was acquitted of the charge relating to the gun found on the floor of the car and we do not have to address standing in resolving the issues presented here.

Street, the officers got out of their vehicles and shouted, "Police!" The group scattered in all directions, and two officers chased the two suspects down a narrow driveway and through the backyard of 129 Putnam Street.

Officer Thomas Lokites followed the two officers chasing the suspects to the back of the premises and came upon a car parked in the driveway that was occupied by three men. Lokites approached the vehicle and asked the defendant, who was sitting in the driver's side of the car, for identification. The defendant responded to Lokites' inquiry by asking Lokites why he wanted to know his name. Lokites then asked the defendant to step out of the car, but the defendant instead started the ignition as if to leave.

Fearing that the defendant might run down the two officers returning from their chase, Lokites reached inside the car to turn off the ignition. As Lokites put his head through the car window, he saw a gun on the floor between the defendant's feet. Lokites yelled to the two returning officers that the defendant had a gun. Lokites then struggled with the defendant to remove him from the car and felt a hard object in the defendant's waistband, which turned out to be another gun. The two officers went to the passenger's side of the car, turned off the ignition and removed the passengers. A further search of the car uncovered narcotics.

The following procedural history is also relevant to this appeal. The defendant was charged with one count of possession of a narcotic substance with the intent to sell, one count of carrying a pistol on his person without a permit and two counts of possession of a weapon in a motor vehicle without a permit. Prior to trial, the defendant filed a motion to suppress the evidence of the guns found in the car and on his person.[3] The court denied the defendant's motion and admitted

[3] The defendant also filed several other motions to suppress that are not at issue in this appeal.

the two guns into evidence. The defendant was subsequently acquitted of the narcotics possession charge and the charge relating to the gun found on the floor of the car, but convicted of the two charges relating to the gun found on his person. This appeal followed.

The defendant claims that the court improperly denied his motion to suppress the gun that was seized from his person. We disagree.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Blackman*, 246 Conn. 547, 553, 716 A.2d 101 (1998).

The defendant claims that when Lokites approached the car, he did not have a reasonable and articulable suspicion, pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), that any of the car occupants had engaged in criminal conduct or was about to engage in such conduct. Additionally, the defendant claims that Lokites did not have grounds to approach him based on exigent circumstances. Consequently, he argues that because Lokites had no right to approach him and subsequently to be in a position to see the gun on the floor, the seizure of the defendant's person and the gun that he carried was illegal. The defendant concedes that if Lokites had the right to approach the car, his actions thereafter were proper. He mounts no separate challenge to Lokites' actions of turning off the car ignition or seizing the gun from his person after Lokites saw the gun on the floor of the car.

The flaw in the defendant's argument is that he misconstrues Lokites' *approach* to the car as a *Terry* stop or as one requiring an emergency situation. Our Supreme Court has recognized that "police on patrol perform a variety of functions. Thus, a police officer, in carrying out his duties, may stop and speak to an individual on the street without necessarily implicating the individual's constitutional rights."[4] *State* v. *Oquendo*, 223 Conn. 635, 656, 613 A.2d 1300 (1992). "Courts have made clear that police officers do not bring about a 'seizure' merely by asking questions of a citizen, even when the officer identifies himself as a police officer." *State* v. *Williamson*, 10 Conn. App. 532, 540, 524 A.2d 655 (1987), citing *Florida* v. *Royer*, 460 U.S. 491, 497–98, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *United States* v. *Woods*, 720 F.2d 1022, 1026 (9th Cir. 1983); *United States* v. *Hernandez*, 668 F.2d 824, 826–27 (5th Cir. 1982).

When we examine Lokites' actions against this legal backdrop, it is clear to us that his approach and initial inquiry of asking the defendant to identify himself did not amount to a *Terry* stop nor did it require an emergency situation. If we were to accept the defendant's reasoning, a police officer would have no right to approach anyone except in an emergency situation or where the officer had a reasonable and articulable suspicion that the person being approached had been involved in criminal activity or was about to commit a crime. Accordingly, we cannot say that Lokites' actions were improper. The court, therefore, properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] While this case involves a police officer located in what appears to be a private driveway, the defendant makes no claim that it was his driveway or that he had an expectation of privacy there. Under these circumstances, we see no reason to distinguish this situation from one where an officer approaches a person on the street.